UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|                          |   |                          |
|--------------------------|---|--------------------------|
| BRUCE JEFFERSON          | : |                          |
|                          | : | PRISONER                 |
| v.                       | : | Case No. 3:02cv754 (AVC) |
|                          | : |                          |
| OFFICER RICCIO, ET AL.[1] | : |                          |

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Bruce Jefferson, an inmate confined at MacDougall Correctional Institution in Suffield, Connecticut, brings this civil rights action pursuant to 28 U.S.C. § 1915. The plaintiff alleges that defendant Riccio sexually assaulted him in February 2002, at Cheshire Correctional Institution.

On April 16, 2003, the court issued a notice informing the plaintiff of his obligation to respond to the motion for summary judgment, explaining the relevant procedural rules and describing the contents of a proper response to a motion for summary judgment.  In addition, the notice cautioned the plaintiff that the motion could be granted and the case dismissed if he failed to respond.  On June 6, 2003, the court granted the plaintiff an extension of time until July 5, 2003, to respond to the motion for summary judgment.  On June 30, 2003, the court issued an order directing the plaintiff to respond to the motion for

---

[1]  The defendants in this action are Officer Riccio, Captain Alves, Unit Manager Bush, Richard Bates, C.T.O. Semino, Kitchen Supervisor Farmer and Lieutenant Medford.

summary judgment on or before July 21, 2003.  On July 8, 2003,

the plaintiff filed an affidavit in opposition to defendants'

motion for summary judgment.  On February 23, 2004, the court

denied plaintiff's renewed motion for appointment of counsel and

motion to stay proceedings and directed the plaintiff to respond

to the motion for summary judgment on or before March 12, 2004.

To date, The plaintiff has not filed an supplemental response to

the motion for summary judgment.  For the reasons that follow,

the motion for summary judgment is granted.

I.    Standard of Review

    In a motion for summary judgment, the burden is on the

moving party to establish that there are no genuine issues of

material fact in dispute and that it is entitled to judgment as a

matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO

Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court

must grant summary judgment "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any

material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661

(2d Cir. 1993) (citation omitted).  A dispute regarding a

material fact is genuine "'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"

Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.)

(quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965
(1992).  After discovery, if the nonmoving party "has failed to
make a sufficient showing on an essential element of [its] case
with respect to which [it] has the burden of proof," then summary
judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).

To defeat a motion for summary judgment that is supported by
documentary evidence and sworn affidavits, a plaintiff "must do
more than simply show that there is some metaphysical doubt as to
the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 586 (1986).  He "must come forward
with enough evidence to support a jury verdict in [his] favor,
and the motion will not be defeated merely ... on the basis of
conjecture or surmise."  Trans Sport, Inc. v. Starter Sportswear,
Inc., 964 F.2d 186, 188 (2d Cir.1992) (citation and internal
quotation marks omitted).  The court resolves "all ambiguities
and draw[s] all inferences in favor of the nonmoving party in
order to determine how a reasonable jury would decide."  Aldrich,
963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not
differ as to the import of the evidence is summary judgment
proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert.
denied, 502 U.S. 849 (1991).  See also Suburban Propane v.
Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

Where one party is proceeding pro se, the court reads the

3

pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.  Facts[2]

On February 15, 2002, the plaintiff was assigned to work in the kitchen at Cheshire Correctional Institution.  Correctional Officer Riccio was assigned to supervise, monitor and pat down inmates entering and exiting the kitchen to ensure that contraband was not being carried in or out of the kitchen.  At approximately 10:40 a.m., Officer Riccio conducted a pat down search of the plaintiff using the technique he had learned through training at the Department of Correction.  The plaintiff accused Officer Riccio of harassing him, told Officer Riccio he did not like the way he performed his job and threatened him. Officer Riccio then issued the plaintiff a pass and ordered him to return to his housing block.  At 11:00 a.m., Officer Riccio completed an evaluation of the plaintiff's work indicating that the plaintiff had performed poorly.  Officer Riccio forwarded the

---

[2]The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #20] and the affidavits [docs. ## 21-24] submitted in support of the motion for summary judgment.  Because the statement is unopposed, the facts are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1.

evaluation to Unit Manager Bush.  Officer Riccio had no further contact with the plaintiff after February 15, 2002.

Unit Manager Bush was inspecting the kitchen area on February 15, 2002, and observed Officer Riccio patting down inmates entering and exiting the kitchen in an appropriate manner.  Unit Manager Bush did not hear any inmates complain concerning the pat searches, including the plaintiff.  Later that day, Unit Manager Bush received the plaintiff's poor work evaluation from Officer Riccio.  He informed the plaintiff and indicated that he would speak to the plaintiff the following day. The poor work evaluation resulted in the plaintiff's immediate suspension from his job pending a hearing on the matter.

Food Service Supervisor Farmer was working in the kitchen on February 14 and 15, 2002.  He heard the plaintiff complaining about Officer Riccio, but did not hear the plaintiff complain that Officer Riccio had conducted inappropriate pat down searches.  The plaintiff complained to Lieutenant Medford that Officer Riccio was conducting an excessive number of pat searches on him, but did not claim that Officer Riccio ever touched him inappropriately.

Unit Manager Bush met with the plaintiff on February 16, 2002, and the plaintiff informed him that he wanted to make a complaint against Officer Riccio.  The plaintiff did not indicate that Officer Riccio had sexually assaulted him.  When Manager

5

Bush later received papers from the plaintiff concerning his complaint against Officer Riccio, Manager Bush informed Major Hall.  On February 18, 2002, the plaintiff sent a letter to the Warden alleging that Officer Riccio had sexually assaulted him during pat down searches conducted on February 14 and 15, 2002.

On February 21, 2002, a Classification Committee, held a hearing to consider the poor work evaluation and hear the plaintiff's testimony concerning the incident.  The Committee included Correctional Treatment Officer Semino, Food Service Supervisor Bates and Manager Bush.  The Committee decided to dismiss the plaintiff from his job in the kitchen due to the poor work evaluation.

At some point after February 19, 2002, Manager Bush received requests from the plaintiff indicating that he wanted to contact the State Police to file sexual assault charges against Officer Riccio.  Manager Bush instructed the plaintiff to contact the state police directly.  On March 12, 2002, the state police did meet with the plaintiff at Cheshire Correctional Institution.  The State's Attorney's Office did not file charges against Officer Riccio.

On February 20, 2002, the warden assigned Captain Alves to investigate the allegations of sexual abuse.  On March 6, 2002, Captain Alves issued a report of his investigation to the warden.  Captain Alves concluded that there was no evidence to support the

plaintiff's allegations of sexual misconduct.  An investigator

from the Department of Correction Central Intelligence Unit

issued a follow-up report in July 23, 2002.  The investigator

concurred with the findings of Captain Alves.

The plaintiff seeks injunctive and declaratory relief and

compensatory and punitive damages from the defendants.  He sues

the defendants in their individual and official capacities.

III. Discussion

The defendants assert seven grounds in support of their

motion for summary judgment.  The defendants argue that: (1) any

section 1983 claims against them in their official capacities for

money damages are barred by the Eleventh Amendment; (2) the State

is not a person subject to liability under 42 U.S.C. § 1983; (3)

the plaintiff has failed to allege that he has exhausted his

administrative remedies; (4) the complaint fails to state a claim

upon which relief may be granted; (5) the court should decline to

exercise supplemental jurisdiction over the plaintiff's state law

claims; (6) the defendants are protected by qualified immunity;

and (7) the request for injunctive relief is moot.

A.    Claims for Monetary Damages in Official Capacity

The defendants contend that any section 1983 claims against

them in their official capacities for monetary damages are barred

by the Eleventh Amendment.  The court agrees.

Generally, a suit for recovery of money may not be

maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

In the amended complaint, the plaintiff names the defendants in their official and individual capacities.  Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion for summary is granted as to the claims for monetary damages against the defendants in their official capacities.[3]

_____

[3]  The defendants also contend that the plaintiff's official capacity claims are barred because the State is not a person subject to liability under 42 U.S.C. § 1983.  The plaintiff contends that he is not suing the State of Connecticut.  Because the Court concludes that the plaintiff's official capacity claims for money damages against the defendants are barred by the Eleventh Amendment, the Court need not address the defendants' supplemental argument.

B.    Exhaustion of Administrative Remedies

The defendants contend that the plaintiff has not fully exhausted his available administrative remedies prior to filing this lawsuit.  The court agrees.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances.  During the relevant time period, section 6(A) provided that the following matters were grievable:

1.    The interpretation and application of policies, rules and procedures of the unit, division and Department.
2.    The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3.    Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4.    Formal or informal reprisal for use of or participation in the Inmate Grievance

       Procedure.
   5.  Any other matter relating to access to
       privileges, programs and services,
       conditions of care or supervision and
       living unit conditions within the
       authority of the Department of
       Correction, to include rights under the
       Americans with Disabilities Act, except
       as noted herein.
   6.  Property loss or damage.

The plaintiff's claims of sexual harassment/assault and loss of a prison job are included within the list of grievable matters at item 5. Thus, the plaintiff was required to fully exhaust his administrative remedies for these claims before he filed this action. The plaintiff alleges that after he returned to his cell on February 15, 2004, he completed two grievances concerning the sexual harassment by Officer Riccio. He claims that he never received a response to these grievances. He does not alleged he appealed the grievance coordinator's failure to respond to his grievances.

The defendants have filed the affidavit of Carrie Ahmed, Grievance Coordinator at Cheshire Correctional Institution. Grievance Coordinator Ahmed indicates that she only received four grievances from the plaintiff on the day or within two weeks of the alleged inappropriate pat searches. She attaches two grievances filed by the plaintiff on February 15, 2002 and two grievances filed on February 28, 2002 to her affidavit. On of the grievances filed on February 15, 2002, concerns a claim relating to legal phone calls. The other grievance includes

10

claims that Officer Riccio was harassing the plaintiff, asking

the plaintiff for food and acting in a "vindictive" manner

towards the plaintiff, but does not include a specific reference

to sexual harassment or inappropriate touching during pat

searches.  One of the grievances filed on February 28, 2002,

specifically references inappropriate sexual touching by Officer

Riccio.  The other grievance concerns plaintiff's requests to

have legal papers notarized.  Grievance Coordinator Ahmed avers

that all four grievances were returned to the plaintiff without

disposition because the plaintiff failed to attempt to informally

resolve his complaints or adequately explain why he did not

attach evidence of his attempts at informal resolution.  She

advised the plaintiff that he could re-file the grievances after

the deficiencies were corrected.  The plaintiff has not alleged

and has failed to provide evidence to demonstrate that he re-

filed his grievances or appealed the rejection of the grievances.

In addition, the plaintiff does not allege that he filed a

grievance concerning the loss of his prison job.[4]  Accordingly,

the defendants' motion for summary judgment is granted as to all

of the plaintiff's federal claims on the ground that he failed to

---

[4]  Even though the decision to terminate the plaintiff's
prison job was issued by a classification committee, the court
concludes that decision is included within the list of grievable
matters.  The classification decisions that are listed as non-
grievable in Administrative Directive 9.6(B) are those decisions
made pursuant to Administrative Directive 9.2 relating to
security risk levels and not to prison job assignments.

11

exhaust his administrative remedies.

    C.    Failure To State A Claim

    The defendants argue that the plaintiff's claims of sexual harassment and loss of a prison job fail to state a claim upon which relief may be granted.  The court agrees.

    1.    Sexual Harassment/Assault

    The Second Circuit has held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997).  To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must meet a two-prong test.  First, the plaintiff must allege a "'sufficiently serious'" deprivation under an objective standard. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991).  "Under the objective standard, 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.'" Boddie, 105 F.3d at 861 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  See also Farmer, 511 U.S. at 834 (a sufficiently serious deprivation occurs when "a prison official's act or omission result[s] in the denial of the 'minimal civilized measure of life's necessities.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, the plaintiff must allege that

the prison officials acted with "'a sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 298)). Under the subjective standard, "prison officials must have acted with deliberate indifference in that they "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Branham v. Meachum, 77 F.3d 626, 631 (2d Cir. 1996) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom., Foote v. Hathaway, 513 U.S. 1154 (1995).

The Second Circuit recognized in Boddie that objectively "[s]exual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm" and "has no legitimate penalogical purpose." Boddie, 105 F.3d at 861 (citing cases). Thus, the "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Id. As to the subjective prong of the test, "[w]here no legitimate law enforcement or penalogical purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Id. Where the inmate alleges a small number of isolated incidents that do not violate contemporary standards of decency or cause severe physical and psychological harm, the allegations are insufficient to state a claim cognizable under 42 U.S.C. § 1983.

13

In <u>Boddie</u>, the prisoner alleged that a female correctional officer touched his penis on one occasion, pressed her breasts against him twice, and pressed her entire body "vagina against penis" once. <u>Id.</u> at 860. The Second Circuit held that the number of incidents was small. "No single incident . . . was severe enough to be 'objectively, sufficiently serious.' Nor were the incidents cumulatively egregious in the harm they inflicted." <u>Id.</u> at 861. Although the court described the incidents as despicable and possibly sufficient to constitute a tort claim under state law, the Second Circuit concluded that the incidents were not sufficient to constitute a constitutional violation under the Eighth Amendment. <u>See</u> <u>id.</u> <u>See also</u> <u>Larocco v. New York City Dep't of Corrections</u>, No. 99CIV.9759SHSRLE, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001) (holding that allegations that correctional officer threw plaintiff against a wall, ripped plaintiff's jumpsuit and pressed his body against plaintiff do not state claim for harm of constitutional proportions); <u>Moncrieffe v. Witbeck</u>, No. 97-CV-253, 2000 WL 949457, at *1, *5-*6 (N.D.N.Y. June 29, 2000) (holding that claims that correctional officers touched plaintiff's genitals and buttocks are not constitutionally cognizable); <u>Nelson v. Michalko</u>, 35 F. Supp. 2d 289, 293 (W.D.N.Y. 1999) (dismissing sexual assault claim where plaintiff alleged that correctional officer used hand-held metal detector to touch him

14

inappropriately in his "anal area"); <u>James v. Coughlin</u>, 13 F.
Supp. 2d 403, 408 (W.D.N.Y. 1998) (holding that even assuming
plaintiff's allegations that correctional officer engaged in
inappropriate sexual touching during frisk search were true,
plaintiff failed to state cognizable constitutional claim);
<u>Holton v. Moore</u>, No. CIV.A.96CV0077, 1997 WL 642530, at *1-*2
(N.D.N.Y. Oct. 15, 1997) (holding that allegations that
correctional officer touched plaintiff's chest, genitals and anus
during search failed to state cognizable claim).

The plaintiff alleges that Officer Riccio squeezed his
breast and touched his buttocks while conducting a pat down
search on three separate occasions and that Captain Alves,
Manager Bush, Kitchen Supervisor Farmer and Lieutenant Medford
failed to take any action to remedy the situation.  The court
considers the alleged actions of inappropriate touching to be
reprehensible and does not condone this type of behavior.
However, just as Boddie failed to state an Eighth Amendment
violation, the allegations here are insufficient to rise to the
level of a constitutional violation.  The plaintiff alleges three
isolated instances of allegedly unconsented touching.  Each
alleged incident occurred while Officer Riccio was conducting a
pat down search of the plaintiff while the plaintiff was moving
food carts to and from various prison housing units.  Officer
Riccio avers that searching inmates working in the kitchen when

they leave and return to the kitchen area was necessary to ensure that no contraband is removed from or brought into the kitchen. Because the plaintiff's allegations as to the three incidents of inappropriate pat searches are not sufficient to state a valid claim under the Eighth Amendment for unconstitutional conditions of confinement, the court concludes that the defendants are entitled to judgment as a matter of law on the plaintiff's sexual assault/harassment claims.

Even if three incidents of inappropriate touching were sufficient to state a claim under the Eighth Amendment, the plaintiff has failed to provide evidence that the incidents of sexual abuse occurred. The plaintiff's declaration submitted in opposition to the motion for summary judgment includes no facts relating to the alleged incidents of abuse. The plaintiff failed to submit any other documentary evidence or affidavits to support his claims. The defendants have submitted the affidavits of Officer Riccio, Unit Manager Bush and Captain Alves. Officer Riccio avers that his pat searches were conducted according to the training he had received from the Department of Correction. (See Riccio Aff. at ¶ 4.) Manager Bush avers that he was working in the kitchen area on the day in question and did not observe any improper touching on the part of Officer Riccio as he conducted pat searches of the inmates, including the plaintiff, who were working in the kitchen. (See Bush Aff. at ¶ 4.)

16

Captain Alves avers that his thorough investigation of plaintiff's allegations of sexual harassment/assault by Officer Riccio revealed that there was no evidence to support the allegations.  (See Riccio Aff. at ¶ 2 and Ex. A.)  Thus, for all the reasons set forth above, the defendants' motion for summary judgment is granted as to the claim of sexual abuse.

2.    Prison Job

The plaintiff alleges that he lost his prison job due to the unfavorable job evaluation issued by Officer Riccio on February 15, 2004.  He claims that he has a liberty interest in his prison job and the defendants violated his right to due process by terminating his kitchen job.  The defendants contend that the plaintiff has no right to a job in prison.

In Connecticut, the Commissioner of Correction is afforded authority to regulate inmate employment.  See Conn. Gen. Stat. §§ 18-7, 18-90a.  These statutes impose no limits on the Commissioner's discretion to determine whether an inmate is afforded the opportunity to work at a prison job.  If a prison job may be granted or denied "'for any constitutionally permissible reason or no reason at all,' the State has not created a constitutionally protected liberty interest."  Olim v. Wakinekona, 461 U.S. 238, 249 (1983) (quoting Connecticut Bd. of Pardons v. Dumchat, 452 U.S. 458, 466-67 (1981)).  See, e.g., Newman v. Alabama, 559 F.2d 283, 292 (5th Cir. 1977), cert.

17

denied, 438 U.S. 915 (1978) (no federal constitutional right to a particular job or a particular pay level in prison); Banks v. Norton, 346 F. Supp. 917, 921 (D. Conn. 1972) (no liberty interest in a job in prison). Similarly, there is no protected property interest in prison employment. See Gatson v. Coughlin, 679 F. Supp. 270, 272 (W.D.N.Y. 1988) (citing Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975)). Thus, the court concludes that Connecticut inmates do not have a protected liberty or property interest in prison employment.

Here, the plaintiff received a poor work evaluation and a classification hearing was held to determine if the plaintiff's assignment to work in the kitchen at Cheshire should be terminated. On February 21, 2002, after hearing plaintiff's testimony, the committee decided to dismiss the plaintiff from his kitchen job. The plaintiff was reassigned to a kitchen job at Garner Correctional Institution in September 2002. Because the plaintiff has no liberty or property interest in prison employment, his allegations that defendants Riccio, Bates and Semino improperly terminated his job assignment as a kitchen worker at Cheshire in February 2002, fail to state a claim as a matter of law. The defendants' motion for summary judgment is granted as to the claim that the defendants' violated the plaintiff's due process rights by terminating his kitchen job in February 2002.

D.    State Law Claims

The defendants contend that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims.    Supplemental or pendent jurisdiction is a matter of discretion, not of right.    Thus, the court need not exercise supplemental jurisdiction in every case.    See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966).    The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants.    The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.    See Id. at 726.    In addition, the court may decline to exercise supplemental jurisdiction where court has dismissed all claims over which it had original jurisdiction.    See 28 U.S.C. § 1367(c)(3); Carnegie- Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims"); Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) ("absent unusual circumstances, the court would abuse its

discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819 (1992).

Here, the plaintiff asserts violations of state statutes, directives and the Connecticut Constitution.  Although this court has the discretion to hear the plaintiff's state law claims, it declines to exercise that jurisdiction in this case because the defendants' motion to dismiss has been granted as to the plaintiff's federal claims.  See Pitchell v. Callan, 13 F.3d 545, 549 (2d. Cir. 1994) (holding that district court did not abuse its discretion by declining to exercise supplemental jurisdiction over state law claims where all federal claims had been dismissed shortly before trial).[5]

IV.  Conclusion

Defendants' Motion for Summary Judgment [**doc. #18**] is **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** in Hartford, Connecticut, this ___*24TH*___ day of March, 2004.

Alfred V. Covello
United States District Judge

---

[5]  Because the court has granted the motion for summary judgment on the grounds set forth above, it does not reach the defendants' remaining two arguments.

20